GEORGE POMEROY ALLEN *et al.*, *vs.* HERBERT M. HOWE *et al.*

MARCH 19, 1906.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Wills.*

Testamentary devise to widow, providing that she should at her pleasure retain the homestead estate so long as she should wish personally to occupy it, and providing further: "My wife has expressed a wish to purchase" (the homestead estate) "I have no objection. Not less than $12,000 should be paid for it. The estate thus purchased should be subject to her disposal by will or should she die intestate should descend to her heirs at law."

Testator devised to his sons certain lots, including the lot later referred to as the "front lot," on the homestead estate, and the will further provided: "If the tract next north of the three portions herein last devised shall within two years have been bought by my wife, and with the understanding

that the estate thus acquired shall descend to the sons, one or all whom she has brought forth, then this devise of the lots next south of the lane to the water fence shall be void in so far as the front lot is concerned." This lot he devised to his daughter D.

The widow purchased the tract within two years after death of testator.

D. deceased, leaving her surviving a husband and children, the complainants in the case.

After the death of D., the widow conveyed by warranty deed the premises deeded to her, as above stated, to E., her heirs and assigns.

On the above facts:—

*Held,* that it was the intention of testator that the widow, if she purchased the estate, should take an estate in fee simple; that, if she had seen fit to provide in some legal manner that the estate should at her death go to her sons, the contingency anticipated in the will would have arisen, and the devise of the "front lot" would have been annulled.

*Held,* further, that, the widow having put it out of her power to do so by her conveyance in fee, the devise of the lot was not rendered void, and the title thereto remained vested in the sons as provided by the will.

BILL IN EQUITY to obtain declaratory decree, certified to the Supreme Court.

PARKHURST, J. This is a bill in equity, brought by the surviving husband and the children and heirs at law of the late Elizabeth M. H. Allen, who was the child and one of the heirs and devisees of the late Bishop Mark A. DeWolfe Howe. It was originally brought in the appellate division of the Supreme Court against the widow and other heirs of Bishop Howe, for the purpose of obtaining a declaratory decree as to the title claimed by the complainants to a portion of the homestead estate of Bishop Howe claimed by them under the provisions of his will and a codicil thereto, and seeking to remove a cloud upon that title arising from the claim of the defendants Arthur W. Howe, Mark A. DeWolfe Howe, and Wallis E. Howe, who claim that they have an absolute title to the premises in question and that the title to said premises is vested in them under the will of Bishop Howe, being divested only under certain contingencies, which they claim have not yet happened and which they say can not happen. These defendants, however, join in the request of the complainants for a declaratory decree establishing the title to said lot.

The possible rights of the other heirs of Bishop Howe in the

premises, under a construction of the will and codicil which might make the premises in question intestate real estate, are also suggested, and the widow and other heirs made parties in order that the decision in regard to the title may be final and conclusive upon them all. These other heirs submit their rights and interest in the matters in question to the court, and offer to abide by its decree herein. All the parties are of full age.

Nearly all the allegations of the bill are admitted by the defendants Arthur, Mark, and Wallis Howe, and practically but a single question of fact is left open. In view of the probability that the whole matter can be adjusted without the taking of testimony or conflict as to facts in court, if the questions of law involved can be determined, all parties joined in requesting the Superior Court to certify the controlling questions of law to this court to be determined before further proceedings in the Superior Court.

The late Bishop Mark A. DeWolfe Howe died July 31, 1895, leaving a last will and testament, which was duly admitted to probate in Bristol, September 3, 1895. He also left a codicil to this will which was imperfectly executed, but, thereafterwards, all the heirs, with their wives, united in an agreement to and with each other that the portion of the codicil which affects the questions involved in this case should have the same effect it would have if it had been admitted to probate in regular order in connection with said will, and to this they bound themselves, their respective heirs and assigns.

At the time of Bishop Howe's death he was seized and possessed of a homestead estate in Bristol, which, in and by his will, he divided up among and devised to his widow and heirs at law, as will more particularly appear by reference to those portions of the will which are hereinafter set forth.

In and by said will he devised to his widow, Eliza W. Howe, and provided that she should at her pleasure retain as a homestead the use of the estate called "Wee-ta-moe," or so much of it as she might desire to retain as a residence, so long as she should wish personally to occupy it; and further provided in said will as follows:

"My wife, who has been specially empowered by her father's will to use part of the money of which she now enjoys the annual income for the purchase of a Dwelling House, has sometimes expressed a wish to purchase "Wee-ta-moe," or rather the portion of it on which are the Mansion and Farm Buildings, with the tier of lots, pertaining to them and running to the shore. I have no objection to such an arrangement. Not less than $12,000 should in such case be paid for it, devisable as hereinafter provided in this will. The estate thus purchased by her, should be subject to her disposal by Will, or should she die intestate, should descend to her heirs at law."

"If this disposition of the Homestead should fail to be accomplished within a reasonable time after my decease (say eighteen months) I propose the following distributions of the property on Metacom Avenue (seeing that no one of my children seems in a condition to hold it as an undivided estate). I cherish the hope that they all or most of them may in due time have cottages on their respective Tracts, and thus together possess the Estate which descended to them from their grandfather and father."

In and by said will he devised to the defendants Arthur, Mark, and Wallis Howe, certain lots on his homestead estate, the westernmost of which is the lot the title to which is in question in this case.

Said will further provided as follows:

"Provided, nevertheless, that if the tract next North of the three portions herein last described and devised, shall within two years after the date of my decease have been bought by my wife, Eliza W. Howe, as permitted in this Document, and with the understanding that the estate thus acquired shall descend to the sons, one or all, whom she has brought forth, then this devise of the lots next south of the Lane to the Water fence shall be void and of no effect in so far as the front or Westernmost Lot is concerned, and that Lot with all the privileges thereto pertaining shall go to my Grandson, Dr. Hobart Amory Hare."

In and by said codicil a different devise was made to the

defendant Hobart Amory Hare, and it was further therein provided as follows:

"Having thus as above provided a foothold on the old Homestead for my Grandson, Hobart, I annul the contingent inheritance in another lot described on sheet '4' of my 'last Will' and under the same conditions I give it to my Daughter Bessie if she finds herself able and disposed to build a summer Cottage thereon."

By "my daughter Bessie" the testator refers to Elizabeth M. H. Allen.

Mrs. Howe did not purchase the tract on which the mansion house and farm buildings are situated within eighteen months after the death of her husband; but within two years after his death she did purchase it, and, together with the other two executors of the estate, reciting that they were "acting under the authority and the powers contained in said will," conveyed it to Mrs. Howe by bargain and sale deed with *habendum* "unto and to the use of said Eliza W. Howe, her heirs and assigns forever."

After the making of the deed to Mrs. Howe, the complainants claim Elizabeth M. H. Allen was able and disposed to build a summer cottage on the lot in question in this case, and that plans were drawn up for that purpose and arrangements made for obtaining the necessary funds. These allegations are denied by the defendants Arthur, Mark, and Wallis Howe.

At all events, before any such plans for building were carried into effect, Elizabeth M. H. Allen deceased intestate, May 25, 1904, leaving surviving her her husband, the complainant, George Pomeroy Allen and the other complainants, who are her children and heirs at law.

After the death of Mrs. Allen, Mrs. Howe, on December 1, 1904, conveyed, by warranty deed, in fee simple, the premises deeded to her by the executors to Mary Deuckle Howe, her heirs and assigns.

The complainants claim the lot in question as belonging to them by right of their mother, Elizabeth M. H. Allen, claiming that the title vested in her on the purchase of the tract on which the mansion and farm buildings are situated, by Bishop Howe's

widow, on the 30th of July, 1897, and that the title has not been divested either by the death of Mrs. Allen or by the conveyance by Mrs. Howe of the land purchased by her of the executors.

The defendants Arthur, Mark, and Wallis Howe claim that the contingency, under which their title to the lot in question was to be divested under the provisions of the will, has never happened and can not now happen.

The other defendants submit their rights to the court, and offer to abide by its decree.

(1) The questions certified to this court by the Superior Court are as follows:

1. Did or not the contingency suggested by the clause of the late Bishop Howe's will, as set forth in paragraph 11 of the bill of complaint, arise when the conveyance of the homestead estate, so-called, was made by the executors of the will to the widow, as set forth in paragraph 13 of the bill of complaint, and in Exhibit " D " annexed thereto?

2. Was or not the happening of the contingency suggested by said will, as set forth in said paragraph 11, postponed until the death of said widow, she being seized and possessed of said homestead estate at the time of her death, without leaving a will or leaving a will devising said homestead estate to one or all of the sons brought forth by her?

3. Did or not the conveyance from Eliza W. Howe, to Mary Deuckle Howe, set forth in paragraph 15 of said bill of complaint and in Exhibit " E " annexed thereto, prevent the happening of the contingency set forth in paragraph 11 of said bill of complaint?

If question 1 is answered in the affirmative and question 2 and 3 in the negative, then:

4. . If Elizabeth M. H. Allen in her lifetime was able and disposed to build a summer cottage upon the lot in question in this cause, as set forth in paragraph 14 of said bill of complaint, did or not her death on May 25, 1904, without having built upon said lot, have any effect, and, if so, what effect, upon the title to said lot?

We think it is quite plain, from the language used by the testator, that it was his intention, if his wife should purchase

the homestead for $12,000, under his will, that she should take an estate in fee simple; all the language is consistent with that view, and with that only. We think he also intended to provide, and did provide, that, if his wife should so purchase, "with the understanding that the estate thus acquired shall descend to the sons, one or all, whom she has brought forth," then the devise of the "Westernmost Lot," being the lot whose title is here in question, to his sons Arthur, Mark, and Wallis should be annulled, and said lot should go, as finally provided in the codicil, to his "daughter Bessie if she finds herself able and disposed to build a summer cottage thereon."

If, therefore, the widow, having purchased the estate, had seen fit to provide in some legal manner, as by a conveyance in fee, reserving a life estate, so that the estate so purchased would at her death go to her sons, the contingency anticipated in the will would have arisen, and the devise of said "Westernmost Lot" to said sons would have been annulled.

But the widow has not seen fit to do this. On the contrary, she has put it out of her power so to do, by her conveyance in fee to the wife of one of the sons; it is therefore beyond her power to fulfill that "understanding that the estate thus acquired shall descend to the sons," etc.

Consequently the devise of the lot in question has never been rendered void, and the title thereto remains vested in Arthur, Mark, and Wallis Howe as provided in the will.

This construction of the will makes it obvious, therefore, that the first two questions certified to this court by the Superior Court must be answered in the negative; that the third must be answered in the affirmative; and that the fourth question becomes immaterial, since no title or right in the lot in question ever has vested in the said Elizabeth M. H. Allen.

The cause is remanded to the Superior Court, with instructions to enter its decree in accordance with this opinion.

*Barney & Lee and H. Merian Allen,* for complainants.

*Henry W. Hayes,* for respondents.